UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 5:14-CR-969 |
| | § | |
| JUAN GONZALEZ | § | |

## **MEMORANDUM AND ORDER**

On October 28, 2014, a grand jury charged Defendant Juan Gonzalez with one count of conspiracy to transport an alien for financial gain and two counts of transporting an alien for financial gain, all in violation of 8 U.S.C. § 1324. Dkt. No. 14. Now before the Court is Defendant's Motion to Suppress Evidence (Dkt. No. 20), wherein he seeks to suppress any evidence obtained from an investigatory stop that led to the discovery of aliens in the vehicle he was driving immediately prior to his arrest. The Court heard evidence and argument pertaining to Defendant's Motion at a hearing on December 1, 2014.

Having considered the relevant legal authority, together with the evidence and argument in this case, the Court finds that the Border Patrol Agent who conducted the stop was aware of specific articulable facts that warranted a reasonable suspicion that the vehicle in which Defendant was driving was involved in illegal activities, namely the unlawful transportation of undocumented immigrants. Accordingly, since the stop did not violate Defendant's Fourth Amendment right to be free from unreasonable seizures, the evidence obtained need not be excluded and Defendant's Motion to Suppress (Dkt. No. 20) is **DENIED**.

I. FACTS

On the morning of October 9, 2014, Border Patrol Agent Octavio Navarro patrolled the area near Laredo Community College's South Campus, which lies between Highway 83 and the Rio Grande River in Laredo, Texas. Agent Navarro was in a marked Border Patrol vehicle when he began his patrol at 8:00 a.m. At approximately 10:30 a.m., he received notification that a ground sensor placed along the bank of the Rio Grande had been triggered near his location. Border Patrol places ground sensors in areas near the Rio Grande to detect the foot traffic of unlawful aliens entering the country. Each sensor contains a unique identification number that allows the Border Patrol to identify its location.

Upon receiving notification of the ground sensor's activation, Agent Navarro travelled south towards the sensor for less than five minutes. While en route, he was flagged down at a four-way stop by a woman driving north from the direction of the ground sensor. The woman told Agent Navarro that she had just witnessed several individuals running from the brush into a green Chevrolet Tahoe. She said that the green Tahoe had, moments earlier, taken a right turn and was heading east away from the Rio Grande towards Highway 83.

Agent Navarro then headed east for approximately one minute. He encountered only one vehicle traveling east: a green Chevrolet Tahoe driven by Defendant at the intersection of Highway 83 and Don Camilo Blvd. Agent Navarro saw multiple occupants inside the vehicle, including three in the back seat. As Agent Navarro approached the Tahoe, he noticed several individuals in the vehicle

turn to look back at him in his Border Patrol unit. He also noticed two individuals seated in the rear of the Tahoe slouch and duck down in their seats when Agent Navarro began to follow.

Agent Navarro then requested a registration check on the Tahoe from his dispatch unit. Before Agent Navarro received the vehicle's registration information, Defendant drove a short distance and then, without signaling, took an abrupt right turn onto a dead end street that was near brush area. At that point, Agent Navarro, believing the driver was engaged in the transportation of unlawful aliens, activated his emergency lights and initiated a stop.

When Agent Navarro pulled the vehicle over, the rear occupants attempted to open the rear passenger side door, but because of earlier damage to the vehicle, they could not do so. Agent Navarro instructed the occupants to remain the vehicle. He then conducted an immigration check and ultimately determined that multiple occupants were illegally present in the United States.

## II. LEGAL STANDARD

The Fifth Circuit has made clear that the "temporary, warrantless detention of an individual constitutes a seizure for Fourth Amendment purposes and must be justified by reasonable suspicion that criminal activity has taken or is currently taking place; otherwise, evidence obtained through such a detention may be excluded." *United States v. Garza*, 727 F.3d 436, 440 (5th Cir. 2013) (citing *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968)). "To temporarily detain a vehicle for investigatory purposes, a Border Patrol Agent on roving patrol must be aware of 'specific

articulable facts' together with [a] rational inference from those facts, that warrant a reasonable suspicion that the vehicle is involved in illegal activities, such as transporting undocumented immigrants." *United States v. Chavez-Chavez*, 205 F.3d 145, 147 (5th Cir. 2000) (citing *United States v. Inocencio*, 40 F.3d 716, 722 (5th Cir. 1984)). Reasonable suspicion, in turn, "requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Gonzalez,* 190 F.3d 668, 671 (5th Cir. 1999).

In *United States v. Brignoni-Ponce*, the Supreme Court laid out a multi-factored analysis in deciding "whether there is reasonable suspicion to stop a car in the border area." 422 U.S. 873, 885 (1975). The factors, which the Fifth Circuit has adopted, are:

(1) the area's proximity to the border;
(2) the characteristics of the area in which the vehicle is encountered;
(3) the arresting agent's previous experience with criminal activity;
(4) the usual traffic patterns on the road;
(5) information about recent illegal trafficking in aliens or narcotics in the area;
(6) the appearance of the vehicle;
(7) the driver's behavior; and,
(8) the passengers' number, appearance and behavior.

*Id.* at 884–85. No single factor is determinative; instead, the totality of the particular circumstances known to the agent is examined when evaluating the reasonableness of a roving border patrol stop. *See United States v. Morales*, 191 F.3d 602, 604 (5th Cir. 1999).

## III. ANALYSIS

Although the application of the *Brignoni-Ponce* factors can often produce close calls, *see Garza*, 727 F.3d at 442 ("The issue is a close one . . . ."); *United States v. Mark*, 481 F. App'x 899, 902 (5th Cir. 2012) ("The question of whether there was reasonable suspicion to stop Mark's truck is admittedly a close call in this case."), this case is not one of them. Applying each of the factors below, the Court finds, based on the totality of the circumstances, Agent Navarro's suspicion that the green Tahoe driven by Defendant was involved in criminal activity was more than reasonable.

### A. Proximity to the Border

The first factor, proximity to the border, "is 'a paramount factor' in determining reasonable suspicion." *Garza*, 727 F.3d at 441 (quoting *United States v. Zapata-Ibarra*, 212 F.3d 877, 881 (5th Cir. 2000)). "Anything less than 50 miles therefore implicates the proximity factor." *Id.* (stating that this "factor contributes significantly to the reasonableness of [the agent]'s suspicions, and weighs heavily in the government's favor in this case"). This factor asks whether the agents had "reason to believe that the vehicle has come from the border." *United States v. Rodriguez-Rivas*, 151 F.3d 377, 380 (5th Cir. 1998).

Here, Agent Navarro encountered Defendant at the intersection of Highway 83 and Don Camilo Blvd., which is in close proximity to the United States-Mexico border and well within the radius of fifty miles that triggers the proximity factor. Accordingly, because the agent could "reasonably conclude" that the green Tahoe

originated its journey at the border, this first factor supports reasonable suspicion. *See United States v. Nichols*, 142 F.3d 857, 866 (5th Cir. 1998).

### B. Characteristics of the Area in Which the Vehicle is Encountered

The second factor looks at whether the area is reputed to be a smuggling route. "It is well established that a road's reputation as a smuggling route adds to the reasonableness of the agents' suspicion." *Zapata-Ibarra,* 212 F.3d at 881. It is equally true, however, that "[r]oads near the border carry not only aliens seeking to enter the country illegally, but a large volume of legitimate traffic as well." *Brignoni-Ponce,* 422 U.S. at 882. Nonetheless, "travel along a route filled with border traffic weighs in favor of reasonable suspicion." *Garza*, 727 F.3d at 440 (citing *United States v. Villalobos,* 161 F.3d 285, 289 (5th Cir. 1998)).

Agent Navarro testified that the area surrounding the Laredo Community College's South Campus is known for smuggling aliens and that it is very common to apprehend unauthorized aliens in this area. In the past four years alone, Agent Navarro recalled making approximately fifty to sixty apprehensions of aliens in this area.

It is certainly true that the intersection of Highway 83 and Don Camilo Blvd. in Laredo is also traversed by law-abiding citizens. And, as Defendant has argued correctly, there are houses and schools in the area that may provide alternate possibilities for Defendant transporting passengers. As the Fifth Circuit articulated in *United States v. Villalobos*, however, "the possibility that Villalobos could have been an innocent traveler did not negate the fact that the area through which he

was driving was both very close to the border and heavily traversed with border traffic." 161 F.3d at 289. In light of the area's reputation as a known smuggling route, this factor counts in favor of reasonable suspicion in this case.

### C. Agent's Previous Experience with Criminal Activity

"[A]n officer's experience is a contributing factor in determining whether reasonable suspicion exists." *Zapata-Ibarra,* 212 F.3d at 882 (quoting *United States v. Aldaco*, 168 F.3d 148, 151 (5th Cir. 1999)). "In all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling." *Brignoni-Ponce*, 422 U.S. at 885.

Here, Agent Navarro completed Border Patrol training and had been a Border Patrol Agent for nearly fourteen years, the last four of which have been focused in the Laredo South Sector where he was stationed that day. *See United States v. Soto*, 649 F.3d 406, 411 n.6 (5th Cir. 2011) (noting that both agents involved in the stop had completed a Border Patrol training program); *United States v. Jacquinot*, 258 F.3d 423, 429 (5th Cir. 2001) (finding pertinent a Border Patrol agent's three years of experience). In addition, as mentioned above, Agent Navarro had extensive experience with encountering smuggling activity in this area. *See Chavez-Chavez*, 205 F.3d at 149 (holding that agents' nearly ten years of combined experience was "of considerable importance in evaluating the totality of circumstances"). Accordingly, given Agent Navarro's previous experience with criminal activity in this area, the third factor weighs in favor of reasonable suspicion.

**D. Usual Traffic Patterns on the Road**

The typical volume of traffic on the road where the stop occurred and the time of day of the stop may add to an officer's reasonable suspicion. *See Aldaco*, 168 F.3d at 152 (finding as relevant the officer's observation that "traffic [wa]s usually scarce on Highway 85 after eight or nine o'clock in the evening"). "Although traveling at an unusual time of day may not by itself give rise to reasonable suspicion, it is a permissible consideration." *Villalobos*, 161 F.3d at 289. Here, Agent Navarro testified that it was not unusual for there to be traffic on Don Camilo Blvd. and Highway 83 at 10:30 a.m. This factor therefore does not weigh in support of reasonable suspicion. *See Chavez-Chavez*, 205 F.3d at 148 ("Traveling on Highway 286 at 8:00 in the morning by itself is not unusual, however, as many law-abiding people do so daily. A factual condition that is consistent with alien smuggling does not provide reasonable suspicion if that condition also occurs even more frequently in the law-abiding public.").

**E. Information About Recent Illegal Trafficking in the Area**

Both the ground sensor activation and the anonymous tip provided to Agent Navarro by the female driver count in favor of reasonable suspicion in this case. First, as to the ground sensor activation, the Fifth Circuit has held "that a sensor hit alone" does not "create a reasonable suspicion for an investigatory immigration stop." *Inocencio*, 40 F.3d at 723. But a sensor hit, together with other *Brignoni-Ponce* factors, may justify such a stop. *See, e.g., United States v. Gonzalez*, 183 F. App'x 455, 456 (5th Cir. 2006) (finding reasonable suspicion existed where Border

Patrol encountered defendant close to the border and near the sensor alert); *Inocencio*, 40 F.3d at 723 (stating that "a hit, together with the observation of an unfamiliar and atypical-looking oil field vehicle with no company logos and an unfamiliar individual wearing clean workman's clothes may, as a whole, justify such a stop"); *United States v. Aguirre-Valenzuela*, 700 F.2d 161, 162 (5th Cir. 1983) (finding reasonable suspicion where sensor hits alerted agents that a vehicle was traveling east toward the agents and twenty-five minutes later, defendant's vehicle erratically drove by, and reasoning that although the "time-space/continuum" was "less than perfect," "the timing of the sensor alerts and the arrival of the [defendant's] car at the agents' location certainly were coincident enough"); *United States v. Carranza*, No. 13-CR-898, 2013 WL 5965308, at *6 (W.D. Tex. Nov. 7, 2013) ("Because the sensor hit had alerted to potential illegal immigration activity near the area where Defendant was driving . . ., the agents reasonably suspected that Defendant was involved in illegal immigration activity of some kind.").

Likewise, the Court finds that the sensor hit here supports a finding of reasonable suspicion. Don Camilo Blvd. provides the closest and most direct route to get from the sensor to the nearest highway, Highway 83. Agent Navarro testified that the only vehicle traveling east that he encountered on Don Camilo towards Highway 83 was the one driven by Defendant. Furthermore, Agent Navarro encountered the Tahoe just minutes after the sensor hit, which provides further support for the time/space continuum of suspected illegal activity. The time and

location of the sensor hit and the encounter with Defendant therefore supports a finding of reasonable suspicion.

Second, as to the anonymous tip provided by the female driver, the Fifth Circuit has recognized that "[a]nonymous tips may provide the reasonable suspicion necessary to justify an investigatory stop." *United States v. Perkins*, 352 F.3d 198, 199 (5th Cir. 2003). To determine whether the tip provides sufficient reasonable suspicion, courts consider: (1) the credibility and reliability of the informant; (2) the specificity of the information contained in the tip or report; (3) the extent to which the information in the tip or report can be verified by officers in the field; and (4) whether the tip or report concerns active or recent activity or has instead gone stale. *United States v. Martinez,* 486 F.3d 855, 861 (5th Cir. 2007). "If a tip is provided by an anonymous informant, such that the informant's credibility and reliability cannot be determined, the Government must establish reasonable suspicion based on the remaining [three *Martinez*] factors." *Id.*

In light of the other factors weighing in favor of reasonable suspicion, the Court need not determine whether the anonymous tip alone provided justification for the stop. Instead, the Court merely examines whether the tip weighs in favor of reasonable suspicion, which it clearly does. *See Villalobos*, 161 F.3d at 291 (noting that regardless of whether a tip alone is sufficient to justify a stop, "it contributes, along with the other *Brignoni-Ponce* factors, to the agents' particularized suspicion of the truck").

Here, less than five minutes after receiving notification that a ground sensor strategically placed next to the Rio Grande was activated – thereby indicating the presence of unlawful aliens travelling east into the United States and away from the border – the agent encountered a female travelling away from the activated sensor who claimed to have, just minutes earlier, witnessed firsthand the smuggling of illegal aliens. The woman appeared excited and nervous as she flagged the agent down, which is consistent with a concerned citizen who just witnessed what she believed to be illegal activity. She conveyed detailed information, including the color, make, and model of the vehicle, the direction in which it was headed, and the area from which the suspected aliens had come. When Agent Navarro followed her tip and travelled down the road indicated for approximately one minute, he encountered one vehicle heading away from the border: a green Chevrolet Tahoe carrying multiple individuals that perfectly and completely matched the description given to him in the tip.

The Fifth Circuit has previously found tips that are close to the border that relay such specificity about a car weigh in support of reasonable suspicion, particularly where the description is validated upon the agents encountering the vehicle. *See United States v. Hernandez*, 477 F.3d 210, 215 (5th Cir. 2007) (noting that "the tip provided the color, number, and type of the vehicles . . . and that description was validated when [the agent] encountered [defendant]"); *United States v. Benavides-Roldan*, 235 F. App'x 237, 238 (5th Cir. 2007) (upholding finding of reasonable suspicion where events occurred in area close to the border and on a

notorious alien smuggling route, and "the tip provided specific information regarding the vehicle and that description was validated when agents encountered the vehicle"). Accordingly, because of the timing of the tip, its specificity, and the manner in which it was verified, the Court finds that this factor weighs heavily in favor of a finding of reasonable suspicion.

**F. Appearance of the Vehicle**

Other than that the green Chevrolet Tahoe driven by Defendant matched the make, model, and color of the description provided by the witness's report, there is nothing to indicate that the vehicle's appearance, standing alone, indicated that it was being used for alien smuggling. *Cf. Garza*, 727 F.3d at 442 (noting that "presence of plywood in the back of a pickup truck may contribute to reasonable suspicion of drug or alien smuggling"); *United States v. Hung-Cebreco*, 192 F.3d 126, 126 (5th Cir. 1999) (stating that vehicle's appearance as "heavily laden" contributed to reasonable suspicion).

**G. Driver's Behavior**

"It is beyond dispute that Border Patrol agents may consider the behavior of a vehicle's driver in determining whether there is reasonable suspicion to stop that vehicle." *Nichols*, 142 F.3d at 868. A driver's behavior, including "erratic driving" or "obvious attempts to evade officers," may contribute to an officer's reasonable suspicion. *Brignoni-Ponce*, 422 U.S. at 885. Nonetheless, the Fifth Circuit has cautioned that "when the officer's actions are such that any driver, whether innocent or guilty, would be preoccupied with his presence, then any inference that

might be drawn from the driver's behavior is destroyed." *United States v. Rivera-Gonzalez*, 413 F. App'x 736, 739 (5th Cir. 2011).

In *United States v. Caravantes-Maldonado*, the defendant "made a sudden, sharp turn off of the highway onto a side road shortly after the agents began following him." 51 F.3d 1045, 1045 (5th Cir. 1995). Even though there was conflicting evidence in the record regarding whether defendant made the sharp turn before or after the agents signaled him to stop, the Fifth Circuit reasoned that "[i]n either event, because of the tell-tale markings of the border patrol vehicle, the officers could reasonably conclude that Caravantes-Maldonado identified their vehicle and was attempting to evade them by making a sudden turn." *Id.*

Similarly, here, shortly after Agent Navarro began following the green Tahoe, Defendant made an abrupt right turn without signaling onto a dead-end street. This conduct suggested that the driver was attempting to evade the marked Border Patrol vehicle, and is consistent with behavior of smuggling activity. This factor, therefore, weighs in favor of finding reasonable suspicion.

### H. Passengers' Number, Appearance, and Behavior

The Fifth Circuit has previously found "evasive action of passengers" to be a "significant factor" in justifying a stop. *United States v. Garcia,* 732 F.2d 1221, 1225 (5th Cir.1984). Similarly, "nervous, erratic behavior, are factors which support a finding of reasonable suspicion, especially in a border case." *Garza*, 727 F.3d at 442. For example, in *United States v. Soto*, Border Patrol agents pulled over

a vehicle in part because the occupant in the back seat "ducked down and leaned back into his seat," upon seeing the agents. 649 F.3d 406, 408 (5th Cir. 2011). In finding that there was reasonable suspicion, the court found "the most compelling consideration of the circumstances" was the occupants' "affirmative indication of an attempt to hide." *Id.* at 410. The rear-seat occupant "was sitting normally until, in an immediate and simultaneous reaction to seeing the officers, he ducked below the window. Indeed, we can think of no plausible explanation for this conduct—nor has one been offered by [defendant]—but that he was attempting to hide from law enforcement officers." *Id.*; *see also United States v. Espinosa-Alvarado,* 302 F.3d 304, 306–07 (5th Cir. 2002) (determining that Border Patrol agents' reasonable suspicion was bolstered by the fact that the defendant "chose the moment the agents appeared in the distance to slump down in such a way that he disappeared (or nearly disappeared) from the sight of an agent looking straight down into the vehicle"); *United States v. Hernandez-Moya*, 353 F. App'x 930, 933 (5th Cir. 2009) (upholding finding of reasonable suspicion for stop based in part on fact that Border Patrol agent's conclusion that "the Tahoe's passengers were attempting to hide by ducking down").

Here, two passengers in the rear of the Tahoe ducked down in their seats shortly after Agent Navarro's marked patrol vehicle began following the Defendant. The Court finds it reasonable for the agent to infer that such action is indicative of an alien attempting to hide from law enforcement. Accordingly, this final factor weighs in favor of a finding of reasonable suspicion.

## IV. Conclusion

Viewing the totality of the circumstances, Agent Navarro had articulable facts, together with rational inferences, that were more than sufficient to warrant a reasonable suspicion that Defendant's vehicle may have contained illegal aliens. *See Brignoni-Ponce,* 422 U.S. at 884. Defendant's vehicle was in close proximity to the border; Agent Navarro was experienced in identifying and apprehending violators of immigration laws; the area was known to Agent Navarro as an area of high criminal activity of the sort he suspected the vehicle to be engaged in; Agent Navarro was responding to a sensor activation in the area, which indicated the presence of unlawful aliens traveling through the area; the driver of the vehicle made an abrupt right turn when followed, which suggested evasiveness; the rear occupants ducked down in their seats, presumably to avoid detection; and significantly, Defendant was driving a vehicle with the same make, model, and color as the description provided by an eyewitness – and heading in the same direction as indicated by the anonymous tip – regarding suspected smuggling activities. Based on these cumulative facts, this Court is easily convinced that reasonable suspicion existed. For these reasons, the Court finds that the stop did not violate the Fourth Amendment. Accordingly, his Motion to Suppress (Dkt. No. 20) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 9th day of December, 2014.

Marina Garcia Marmolejo
United States District Judge